# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-20575

United States Court of Appeals
Fifth Circuit
**FILED**
March 1, 2017
Lyle W. Cayce
Clerk

STACEY VETTER,

    Plaintiff - Appellant

v.

CHRISTINE MCATEE,

    Defendant - Appellee

United States District Court
Southern District of Texas
FILED

MAR 2 3 2017

David J. Bradley, Clerk of Court

4:12CV2316
4:13CV2563

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

INSIGNIA MARKETING, INCORPORATED,

    Plaintiff - Counter Defendant - Appellee Cross-Appellant

CHRISTINE MCATEE,

    Counter Defendant - Appellee

v.

STACEY VETTER,

    Defendant - Counter Plaintiff - Appellant Cross-Appellee

LARRY TAYLOR; NANCY SHEPPARD; DAVID RAPPE; THE PROMO AGENCY COMPANY; DAVID FECHTMAN; AIA-LOGO PROMOTIONS, L.L.C.,

    Defendants - Appellants Cross-Appellees

No. 15-20575

---

Appeals from the United States District Court
for the Southern District of Texas

---

Before JOLLY, HIGGINBOTHAM, and PRADO, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

A jury trial on several claims and counter-claims, including trademark infringement and breach of partnership agreement, resulted in judgments adverse to both parties. They have now appealed and cross-appealed citing several errors that they believe the trial court committed. We affirm.

## I.

Plaintiff–Appellant Stacey Vetter ("Vetter") is an individual who lives and works in Anchorage, Alaska. She owns AIA-LOGO! Promotions, LLC ("Logo Promotions"). Defendant–Appellee Christine McAtee is an individual who lives and works in Houston, Texas. She owns Insignia Marketing, Inc. ("Insignia"). Those two individuals and the entities they own are the primary parties to this dispute. They met because they were both franchisees of Adventures in Advertising ("AIA"), a franchisor of promotional products.

In 2011, Vetter and McAtee briefly entered into a partnership to market to hospitals a new kind of whiteboard that improved hospital staff's ability to communicate with patients. They dispute who came up with the idea for the product and when. No written partnership agreement was created. The whiteboard product that the partnership marketed came to be known as "Communicat-R."

The partnership operated with the support of AIA. When the partnership received an order for a Communicat-R, the partnership would request that AIA fulfill the order through a pre-selected vendor that had been provided with the design. Upon construction of the ordered Communicat-R, the vendor would

ship the board to the customer, AIA would invoice the customer, and then AIA would cut the vendor and the partnership a commission from the proceeds. The partnership hired Vetter's nephew, a web designer, to control the partnership's web domains.

In December of 2011, the relationship between Vetter and McAtee soured. They both allege that the other engaged in self-dealing, misappropriated partnership property, and refused to reimburse for partnership expenses. Vetter allegedly instructed her nephew to hijack control of the Communicat-R website. After the termination of the partnership, Vetter and McAtee both continued selling the whiteboards. They were unable to resolve many differences between them, including who owned the Communicat-R trademark and who was entitled to about $80,000 held by AIA and owed to the partnership. After Vetter had already filed the initial complaint of this lawsuit, McAtee's company Insignia applied to the United States Patent & Trademark Office ("USPTO") for registration of the trademark "Communicat-R" in connection with the whiteboard product.

Vetter initiated this lawsuit in the Southern District of Texas, claiming breach of the partnership agreement by McAtee. McAtee counter-claimed for breach of the same partnership agreement. Then McAtee's corporation Insignia initiated a separate lawsuit against Vetter and Vetter's company Logo Promotions for trademark infringement, copyright infringement, cyber piracy, false advertising, and civil conspiracy. The two suits were consolidated. Various claims, plaintiffs, and defendants were dismissed from the suit for various reasons, none of which comes to us on appeal. AIA intervened in the case for the sole purpose of interpleading $80,851.59 that it held in connection with the partnership's sale of whiteboards. It deposited the money into the registry of the court, then was dismissed from the suit.

No. 15-20575

At trial, the jury considered Vetter's and McAtee's breach-of-partnership-agreement claims against each other, as well as Insignia's trademark-infringement, cyber-piracy, false-advertising, and civil-conspiracy claims against Vetter and Logo Promotions. The jury found that Vetter, but not McAtee, had breached the partnership agreement, and awarded $60,000 in damages. However, it found that neither Vetter nor Logo Promotions had infringed Insignia's trademark. In fact, it found that Insignia had obtained registration of the "Communicat-R" trademark through fraud, that the mark was not in use on the day it was registered, and that Insignia had abandoned the mark after registration, all supporting cancellation of the registration. The jury found Vetter and Logo Promotions liable for false advertising, but not cyber piracy or civil conspiracy. However, it awarded $0 in false-advertising damages.

The trial court entered judgment on the jury's verdict. It also ordered that Insignia's registration of the Communicat-R mark be cancelled and that the interpleaded funds be divided equally between Vetter and McAtee. Finally, it noted that both parties had waived any claim to attorneys' fees by failing to request them in the Joint Pretrial Order. Notwithstanding the trial court's finding of waiver, Vetter (as the prevailing party on the trademark claims) moved for statutory attorneys' fees under the Lanham Act, arguing that there had been no waiver because the issue of attorneys' fees is properly raised in a post-judgment motion rather than in a pre-trial order. The trial court again denied attorneys' fees, reaffirming its finding of waiver and finding in the alternative that the case was not "exceptional" enough to warrant such an award under the Lanham Act. McAtee moved for a partial new trial and Vetter moved for renewed judgment as a matter of law. The trial court denied both motions.

No. 15-20575

Vetter timely appealed, and McAtee timely cross-appealed. McAtee seeks a new trial and a larger proportion of the interpleaded funds. Vetter asks us to reverse the $60,000 judgment entered against her and find that she is entitled to attorneys' fees.

## II.

We begin with McAtee's request for a new trial. That request is founded on two distinct grounds, each requiring a distinct analysis: first, that trial errors warrant a new trial; and second, that the jury's verdict was against the great weight of the evidence. We address these contentions in turn.

### A.

First, McAtee argues that various errors in the admission of evidence, remarks of counsel, and jury instructions warrant a new trial. She admittedly failed to preserve all but one of these errors in the trial court. We first consider all of McAtee's unpreserved objections, then consider her sole preserved objection.

*Unpreserved Objections*

McAtee faults the trial court for the following errors that she admits are unpreserved: prejudicial arguments of counsel, admission of evidence in violation of Fed. R. Evid. 408,[1] lack of a jury instruction on subjective intent in connection with fraud on the USPTO, lack of an instruction on common law trademark rights, lack of an instruction on a presumption of trademark abandonment, an erroneous instruction on trademark abandonment, and an

---

[1] Weeks after argument in this case, McAtee submitted a letter pursuant to Fed. R. App. P. 28(j) in which she reversed course and instead asserted that she *did* preserve her Rule 408 objection, so abuse-of-discretion review applies. Even if we were persuaded, we would find any error in the admission of the e-mail in question harmless; not only was there significant other evidence from which the jury could have found trademark abandonment, it also made two findings other than trademark abandonment that supported cancellation of the registration of the Communicat-R mark: nonuse and fraud on the USPTO.

5

erroneous instruction on trademark-infringement damages. Because these objections are unpreserved, we review for plain error.[2]

> [O]ur plain error analysis proceeds in four steps. First, we determine whether the district court's conclusion was erroneous. Second, if the court erred, we determine whether the error was clear and obvious under the law as it exists at the time of the appeal. Third, we determine whether the error affects substantial rights. Finally, if all of these conditions are satisfied, we have discretion to reverse the trial court's judgment based on a forfeited error if we conclude that the error seriously affects the fairness, integrity or public reputation of judicial proceedings.[3]

Upon inspection of the record and careful consideration of McAtee's arguments, we do not believe that any of the unpreserved errors rise to the level of clear or obvious error. Additionally, we are not persuaded that any of those errors affected her substantial rights, and even if they did, we would not exercise our discretion to order a new trial. Accordingly, we deny relief based on any of the forfeited errors that McAtee raises on appeal.

*Preserved Objection*

McAtee complains that the trial court erred by declining to include a jury instruction on excusable trademark nonuse that she requested. McAtee preserved this objection in the trial court, so we review for abuse of discretion.[4]

The trial court instructed the jury:

Trademarks can be abandoned through non-use. A trademark is abandoned if it is proven by a preponderance of the evidence, that (1) the use of trademark was discontinued; and (2) an intent not to resume such use.

---

[2] *United States v. Avants*, 278 F.3d 510, 520-21 (5th Cir. 2002); *see also In re SeaQuest Diving, LP*, 579 F.3d 411, 426 (5th Cir. 2009) (plain-error review applies in civil cases).

[3] *Avants*, 278 F.3d at 521 (internal quotation marks, alterations, and citations omitted).

[4] *Price v. Rosiek Constr. Co.*, 509 F.3d 704, 707-08 (5th Cir. 2007).

No. 15-20575

The jury found that Insignia had abandoned the trademark Communicat-R. McAtee complains that the instruction fails to mention that some trademark nonuse is excusable.

We do not believe that the trial court abused its discretion by declining to include the instruction that McAtee sought. The instruction as written correctly states the law. "Excusable nonuse," as McAtee frames it, is captured by the instruction to the jury that an element of trademark abandonment is "intent not to resume use" because the additional language that McAtee seeks would only inform the jury that some nonuse does not indicate intent to abandon. Thus, an instruction that some trademark nonuse is excusable would have been redundant. Moreover, "excusable nonuse" as it is more commonly framed is a concept used to rebut the statutory presumption of trademark abandonment.[5] But no such presumption of abandonment operated here, making "excusable nonuse" so framed irrelevant. We also deny relief based on McAtee's sole preserved error.

We are not persuaded that the errors that McAtee raises justify a new trial, so we affirm the trial court's denial of McAtee's motion for a new trial to the extent that the motion was based on errors in the trial and jury instructions.

**B.**

Second, McAtee argues that she deserves a new trial because the findings of the jury disfavoring her were against the great weight of the evidence. To prevail on this point, McAtee must demonstrate "an absolute absence of evidence to support the jury's verdict," an abuse of discretion in

---

[5] *See, e.g., Imperial Tobacco Ltd., Assignee of Imperial Grp. PLC v. Philip Morris Inc.*, 899 F.2d 1575, 1581 (Fed. Cir. 1990) ("If a registrant's nonuse is excusable, the registrant has overcome the presumption that its nonuse was coupled with an 'intent not to resume use,' or, as Imperial would have it, an 'intent to abandon.' If the activities are insufficient to excuse nonuse, the presumption is not overcome.").

7

No. 15-20575

denying her motion for a new trial.[6] McAtee complains about three of the jury's findings: that she and her company Insignia defrauded the USPTO, that Insignia had not used the Communicat-R mark when it applied for registration of it, and that Insignia abandoned the mark.

At least some evidence was presented at trial that McAtee and Insignia defrauded the USPTO in connection with Insignia's application for registration of the Communicat-R mark. Vetter testified that the partnership was the actual first user of the Communicat-R mark—a fact that McAtee and Insignia would have known about but represented otherwise in applying for registration of the mark. Of course, the jury was entitled to credit Vetter's testimony over McAtee's.

At least some evidence was presented at trial that Insignia had not used the Communicat-R mark when it applied for its registration. Vetter testified that the Communicat-R mark had only been used by the partnership, not by Insignia, and offered evidence that McAtee acknowledged the same to others.

Finally, at least some evidence was presented at trial that Insignia abandoned the Communicat-R mark. Vetter offered evidence that McAtee stated in an e-mail: "I do not wish to use anything for the Communicat-R ever again." That Insignia resumed use of the mark within nine months of stopping does not necessarily negate intent to abandon.

There was then at least some evidence at trial to support each of the jury findings of which McAtee complained. We also affirm the trial court's denial of McAtee's motion for a new trial to the extent that the motion challenged the jury's verdict as against the great weight of the evidence.

---

[6] *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1049 (5th Cir. 1998) (quoting *Dawsey v. Olin Corp.*, 782 F.2d 1254, 1262 (5th Cir. 1986)).

No. 15-20575

## III.

We turn to Vetter's appeal of the $60,000 judgment entered against her. The jury found that Vetter breached the partnership agreement and awarded $60,000 in damages for that breach. After the jury's verdict, Vetter renewed her motion for judgment as a matter of law, arguing that there was no evidence to support the jury's damages award.[7] The thrust of Vetter's argument was that all of McAtee's trial evidence pointed toward damages suffered by *Insignia*, not by *McAtee*, so there was no evidence that McAtee individually suffered any damages. The trial court denied the motion.

We review the denial of a renewed motion for judgment as a matter of law *de novo*, but our standard of review with respect to a jury verdict is especially deferential.[8] A motion for judgment as a matter of law can be granted if the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable people could not arrive at a contrary verdict.[9] The Court must draw all inferences in favor of the nonmoving party, but may not make credibility determinations or weigh the evidence.[10]

A reasonable jury could have found that McAtee personally suffered damages as a result of Vetter's breach of the partnership agreement. At trial, McAtee called a damages expert who was "asked to provide opinions as to the damages . . . Insignia and Ms. McAtee had suffered in this matter." He testified that "Insignia's and Ms. McAtee's lost profits [were] a total $832,464." Though he did not separate damages sustained by Insignia from those sustained by McAtee, a reasonable jury could have found that McAtee personally suffered

---

[7] She had orally moved for judgment as a matter of law before the case was submitted to the jury.
[8] *Evans v. Ford Motor Co.*, 484 F.3d 329, 334 (5th Cir. 2007).
[9] *Id.*
[10] *Id.*

9

No. 15-20575

damages as a result of Vetter's breach. After all, McAtee was the party to the breached partnership agreement, not Insignia.

Moreover, the jury could have awarded damages based not on McAtee's lost profits, but on the benefit Vetter received. Texas partnership law supports such an award.[11] McAtee's damages expert also testified that "[Vetter]'s profits [were] $474,993." A reasonable jury could have found that Vetter had derived a benefit from her breach of fiduciary duty and awarded damages based on that benefit.

We affirm the trial court's denial of Vetter's renewed motion for judgment as a matter of law.

## IV.

McAtee complains that the trial court erred in its post-verdict distribution of the interpleaded funds. The partnership's arrangement was supported by AIA, which controlled the manufacture of the patient boards and invoiced customers who purchased them, thereafter remitting the partnership's cut. When Vetter's and McAtee's relationship soured AIA held $80,851.59 awaiting the partnership. Though from the beginning AIA had distributed the sale proceeds equally between Vetter and McAtee, with legal proceedings, it became unsure of their proper distribution, so it briefly intervened in this lawsuit for the sole purpose of interpleading the funds. The trial court determined in its final judgment that the interpleaded funds were partnership funds that should be divided equally between Vetter and McAtee. McAtee now argues on appeal that the trial court should have awarded all of the interpleaded funds to her.

The disbursement of funds interpleaded into the registry of the court is

---

[11] *See Woodruff v. Bryant*, 558 S.W.2d 535, 544 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.).

No. 15-20575

"equitable in nature."[12] When both legal and equitable issues are presented in the same case, the trial court must allow determination of the legal claims first, by jury if demanded, then render judgment on the equitable claims, bound by relevant findings of the jury.[13] The trial court did so here. After the jury's verdict, it found that the interpleaded funds were best characterized as partnership funds, so they ought to be disbursed equally between the parties. That ruling is consistent with the jury's verdict—indeed, nigh mandated by it because the jury's findings that Insignia had not used the Communicat-R mark and defrauded the USPTO by representing that it had strongly suggest that the jury found *the partnership* to have been the one using the mark rather than Insignia, which in turn suggests that the funds held by AIA were *partnership* funds.

In any event, we review the trial court's subsidiary factual finding that the interpleaded funds were partnership funds for clear error,[14] and there is nothing clearly erroneous about that finding. AIA's chief financial officer testified at trial that both Vetter and McAtee had individual accounts in AIA's accounting software, and that at the beginning of their partnership, a third account was set up for partnership purposes. His understanding was that the two women were to be joint owners of that account. Until the partnership broke up, AIA equally divided the sale proceeds between Vetter and McAtee without any complaint. We are persuaded that the trial court's finding is supported by the evidence and its handling of the funds was free of procedural error. We affirm the trial court's equal division of the interpleaded funds.

---

[12] *United States v. Beach*, 113 F.3d 188, 191 (11th Cir. 1997).
[13] *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479-80 (1962).
[14] *In re Mole*, 822 F.3d 798, 804 (5th Cir. 2016).

11

No. 15-20575

## V.

Finally, we address Vetter's contentions that the trial court erred in any claim of attorneys' fees by finding them waived and, alternatively, unwarranted. Even assuming that the trial court's finding of waiver was erroneous, we affirm its alternate finding that attorneys' fees are unwarranted in this unexceptional case.

As an initial matter, we decline Vetter's invitation to hold that cases of fraud on the USPTO are exceptional as a matter of law. As with most statutes authorizing attorneys' fees, the Lanham Act's fee-shifting provision vests significant discretion in the district courts to grant or deny attorneys' fees on a case-by-case basis depending on each's particular facts.[15] It would then be inappropriate to single out a broad swath of trademark cases in which attorneys' fees *must* be awarded.

Turning to this particular case, Vetter presented to the trial court each and every argument that she now presents to us in support of an award of attorneys' fees. The trial court rejected all of them. Vetter now argues that the trial court applied the wrong standard in light of this Court's holding in *Baker v. DeShong*, which borrowed attorneys' fees jurisprudence under the Patent Act for the Lanham Act.[16] However, Vetter already urged the trial court to apply the standard required by *Baker*, and it is not clear to us that the trial court applied any different standard. Vetter has not articulated any facts or arguments in support of attorneys' fees that we believe necessitate remand for additional consideration. We affirm the denial of attorneys' fees.

Affirmed.

---

[15] *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014); *see also Baker v. DeShong*, 821 F.3d 620, 624-25 (5th Cir. 2016) (applying the *Octane Fitness* standard to 15 U.S.C. § 1117(a), the Lanham Act's fee-shifting provision).

[16] *See Baker*, 821 F.3d at 624-25.